FIRE ASSOCIATION OF PHILADELPHIA *v.* BONDS.

## Opinion delivered October 25, 1926.

1.  INSURANCE—CONCURRENT FIRE INSURANCE—WAIVER.—A condition in a fire insurance policy against concurrent insurance *held* not waived by insurer's agent.

2.  INSURANCE—RETENTION OF POLICY—PRESUMPTION OF ACCEPTANCE. —Though retention of a policy by insured raises a presumption of acceptance, which, in absence of explanation, makes insured liable for the premium, such presumption is rebuttable.

3.  INSURANCE—APPLICATION AND ACCEPTANCE OF POLICY.—An insurance agent cannot, by sending a policy to one who does not want it and has not authorized its issuance, impose an obligation to pay the premium, and such a policy would not be effective as a contract of insurance if there were no obligation to pay the premium.

4.  INSURANCE—ACCEPTANCE OF POLICY.—In an action on a policy of fire insurance, where the defense was that insured carried other insurance in violation of a provision against carrying concurrent insurance, evidence *held* to show that insured never accepted the policy, but elected to reject it by refusing to pay the premiums thereon.

5.  INSURANCE—TIME TO SUE ON POLICY.—A suit on a policy of fire insurance before the expiration of the 60 days allowed to the company to determine whether to pay the policy was not premature where the company had definitely refused to pay more than half of the face of the policy.

6.  INSURANCE—PENALTY AND ATTORNEY'S FEE.—An insurance company which refused to pay the face of its policy when liable thereon is liable for the statutory penalty and reasonable attorney's fees.

Appeal from Randolph Chancery Court; *Lyman F. Reeder,* Chancellor; affirmed.

*Roscoe R. Lynn,* for appellant.

*John L. Bledsoe,* for appellee.

SMITH, J. Appellee owns a house and lot in the city of Pocahontas, upon which he had executed a mortgage to the Randolph County Bank to secure a loan of $300 made to him by the bank. The mortgage is not copied into the transcript, but it is admitted that it contained a clause requiring the mortgagor to insure the property in a sum sufficient to protect the loan made by the bank.

Appellee applied to and obtained from the appellant insurance company a policy covering the house in the sum of $800, with additional insurance of $250 on the household goods. This policy was issued January 13, 1924, by Judge Meeks, the local agent of the appellant company, who had authority to countersign, issue and deliver policies, and expired one year from that date. After receiving this policy, appellee delivered it to the bank, and it remained in the bank's possession thereafter.

Appellee had for several years been carrying his insurance with Judge Meeks, and had directed him to renew the policy, but, about the time of the expiration of the policy held by the bank, appellee received from the bank a policy written by the bank as agent of the Atlas Fire Insurance Company, covering the house and household furniture. Appellee then went to Judge Meeks and told him that he wished him to write the insurance, but that he owed the bank, and he was apprehensive, if he did not allow the bank to write the insurance, the loan would be foreclosed upon its maturity. Judge Meeks told appellee he thought this could be arranged by getting another bank in the city to carry the loan if the Randolph County Bank attempted to foreclose. Judge Meeks saw the other bank, made the necessary arrangements, and advised appellee that he had done so, whereupon appellee told Judge Meeks to continue the insurance. Judge Meeks had, before the expiration of the first policy, written the policy here sued on, and had placed it on his desk, and this last policy was delivered to appellee and the premium paid after the arrangement had been made for another bank to carry the loan if this became necessary.

The assistant cashier of the Randolph County Bank, who had charge of the insurance department of that bank, testified that the bank was the local agent of the Atlas Insurance Company, and that, when the policy expired which appellee had placed in its possession, he wrote a policy for appellee on the same property, which became effective on the day the old policy expired. The bank had never before written any insurance for appel-

lee. It was not directed to write insurance for appellee. The matter of writing the policy was not mentioned to appellee, but the policy was written to protect the bank's security and the policy was mailed to appellee, who never returned it. Monthly statements covering the premium were sent to appellee, but no response of any kind was received. Witness called at appellee's home on two occasions to see him about the insurance, but appellee was not at home either time, and nothing was ever said to appellee about the insurance, until after the fire, except to send statements covering the premium, which appellee ignored.

Appellee testified that, when he conferred with Judge Meeks, he told the judge that he would have to cancel one or the other of the policies, as he was not able to pay for both, and when Judge Meeks removed the fear of foreclosure if he did not take and pay for the policy written by the bank, appellee told Judge Meeks that he would keep his policy, and he paid him the premium. Appellee also testified that he did not return the Atlas policy to the bank because he had never told it to write the insurance, and did not feel that he ought to run after it to take the policy back, as he felt it was trying to impose upon him because it had a mortgage on his property. That he never considered the Atlas policy in force; that he never paid the premium on that policy or promised to do so, and that he never had any intention of doing so.

The property insured was destroyed by fire on April 19, 1924, and negotiations were entered into with the adjuster of the appellant company, and, when the adjuster was advised of the issuance of the Atlas policy, he declined to pay more then one-half the amount of the insurance. This position of the adjuster was based upon a provision found in both the policies, that the insurer should not be liable for a greater proportion of the loss than the limit of the policy bore to the whole amount of insurance on the property destroyed.

When the adjuster announced this position, this suit was brought against appellant company. Appellant filed

an answer, setting up the fact that another policy was outstanding, and prayed that the Atlas Company be made a party defendant. This was done, and the cause was transferred to the chancery court, on the motion of appellant, and, upon a trial there, it was decreed that appellant alone was liable, and judgment was rendered against it for the face of the policy, with the statutory penalty of 12 per cent., and an allowance of $100 as attorney's fee was made, and this appeal is prosecuted to reverse that decree.

For the reversal of the decree, appellant insists that it is not liable in any sum, for the reason that the policy sued on contained a provision that the policy should be void "if insured now has or shall hereafter make or procure any other contract of insurance, whether valid or not, on property covered in whole or in part by this policy." Appellant also insists that in no event is it liable for more than one-half of the amount of loss sustained by appellee, and it is also insisted that the suit was prematurely brought, in that the policy provided that no suit should be brought within sixty days of the date of loss, and, for these reasons, appellant insists that it could not be liable for the statutory penalty and an attorney's fee.

For the affirmance of the judgment appellee insists (a), that the provisions of the policy against concurrent insurance was waived by Judge Meeks, acting for appellant; and (b), that the provision was never violated, in that only one policy—the one sued on—was in force as a contract of insurance.

We do not agree with appellee in his contention that Judge Meeks waived the provision of the policy which invalidated it in the event there was other insurance. This court has many times held that such provisions are valid, and will be enforced unless waived; but we have also frequently held that the provision may be waived, and is waived if, with knowledge that the condition has been violated, the agent issuing the policy consents to a continuance of the contract of insurance. This prin-

ciple was applied in the late cases of *Fidelity Phenix Fire Ins. Co.* v. *Roth,* 164 Ark. 608, 262 S. W. 643, and *National Union Fire Ins. Co.* v. *Kent,* 163 Ark. 7, 259 S. W. 370, and in other cases there cited.

The principle applied in those cases was that the provision was for the benefit of the insurer, and being for its benefit, might be waived, but, to constitute a waiver, there must be knowledge of the violation of the provision and consent, either expressly given or necessarily implied from the fact that, with knowledge of its violation, the policy was not canceled as a contract of insurance, as it might have been.

We think, if it does not appear from the undisputed evidence, it is certainly shown by a clear preponderance, that Judge Meeks did nothing which could be construed as consenting that two policies should be outstanding on the property burned. The proposition addressed to Judge Meeks was which of two policies should be effective, and his efforts were directed to arranging for appellee to carry the insurance in his company. He testified that he did not think there ought to be two policies covering the same property, and, when asked, "What would have been your duty to your company if you had known that the other policy was to be kept?" he answered, "I think I would have canceled mine. I should have canceled it if I had known that there were two policies." He testified that he understood appellee intended to return the Atlas policy, and that he presumed this would be done. He was also asked, "If you had not understood that he (appellee) was going to take it (the Atlas policy) back, would you have canceled your policy?" and he answered, "I think so; I feel sure that I would." Appellee did not remember that he had promised Judge Meeks to return the Atlas policy, but he does not deny that he had done so.

Under these circumstances we do not think it can be said that Judge Meeks, acting for the appellant company, waived the provision against concurrent insurance. It is true he did not cancel his policy after knowing that the

bank had written one for the Atlas company, but we think it very clear this was not done for the reason that he believed appellee had elected to keep his policy and would not keep the other.

We do think, however, that appellee is correct in his second position, that is, that there was never in fact but one policy in effect.

In the case of *Gray v. Blackwood,* 112 Ark. 332, 165 S. W. 958, suit was brought to collect a premium on a life insurance policy which had been issued to and held by the defendant, the insured, and we there held that it was error to charge the jury that the burden was on the plaintiff to prove that the defendant had accepted the policy. In that case we quoted from the case of *Mutual Life Ins. Co. v. Parrish,* 66 Ark. 612, 52 S. W. 458, the following declaration of law: ''The mere manual possession of the policy by either party makes a *prima facie* case for that party, subject to be rebutted by proof *aliunde* that the contract of insurance was complete and valid, or that delivery was essential to completion or not without delivery.'' And we there further said: ''If the beneficiary had brought suit on the policy and produced the same at the trial, and the company had admitted the death of the insured, this would have made a *prima facie* case in favor of the beneficiary, and the burden of proof would have been on the insurance company to show that the policy of insurance had not been accepted. So here the defendant, to whom the policy was issued, remained in possession of it from that time until the institution and trial of this case in the court below. This made a *prima facie* case in favor of the plaintiff, and, in the absence of evidence to the contrary, Mrs. Blackwood (the insured) would be deemed to have accepted the policies at the time they were left in her possession, and the burden of proof was on her to show that she had not accepted them.''

The judgment in that case was reversed, and a second appeal was prosecuted under the same style, and is found reported in 117 Ark. at page 100. In that case the judgment in favor of the insured, who was sued for the

premium, was affirmed, and in affirming it we said: "It is well settled that one who retains a policy of insurance in his possession will be deemed to have accepted it, and cannot avoid liability for the premium, but that principle does not apply when the proof shows there was express refusal to accept the policy in any form. Appellee was not bound to do anything more than her own testimony showed that she did in expressing her nonacceptance, and her testimony was sufficient to overcome any *prima facie* presumption of acceptance arising from the fact that the policies were found in her house or possession."

It thus appears that, while the retention of a policy of insurance does raise a presumption of acceptance, which, in the absence of proper explanation, makes the person insured liable for the premium, this presumption is not conclusive, but may be rebutted. So here we think that, while the testimony does show that the Atlas policy was sent to appellee, and never returned by him, the testimony also shows that he never authorized its issuance and never accepted it as a contract of insurance.

An agent cannot, by mailing or sending a policy to one who does not want it, and who has not authorized its issuance, impose an obligation to pay the premium required by the policy; and the policy would not be effective as a contract of insurance if there were no obligation to pay the premium. The retention of the policy might raise a presumption of acceptance, but this presumption may be overcome by showing there was in fact no acceptance; and we think that showing was made here, and the Atlas Company policy was never effectual as a contract of insurance, and the court below was correct in so holding.

It is an undisputed fact that appellee did not authorize the bank to write the Atlas policy, and it is also undisputed that he never at any time agreed to pay the premium, and that he ignored several statements sent him by the bank covering this premium. He testified that he felt the bank was attempting to impose upon him because it had a mortgage on his property, and his conduct in

connection with the issuance of the policy sued on shows, we think, very clearly his election to take the policy issued by Judge Meeks and to reject the other. Had he sued the Atlas company, the right to recover would have been denied appellee if the testimony before us had been offered in that case.

It is true that the bank had the right to protect its security. The mortgage required the mortgagor to insure the property, and this provision would have given the mortgagee the right to take out insurance to protect its security had this been necessary. But this was a secondary right. The primary duty to insure was upon the mortgagor. It was his duty to take out the insurance and pay the premium. He had done this, and had delivered a satisfactory policy to the mortgagee. There was no refusal on his part to keep insurance in force; indeed, he was making a very earnest effort to do so, and if he had in fact discharged this obligation, then the bank had no right to require him to pay for additional insurance. The amount of the insurance was largely in excess of the debt due the bank, and it had no right to carry insurance in a larger amount than was necessary to protect its security. Sufficient insurance was being carried for this purpose, and the action of the bank in issuing the policy in the Atlas company was therefore unauthorized.

The bank was anxious, no doubt, to write this policy to earn the premium which would have inured to it, so also was Judge Meeks, but appellee was unwilling to carry insurance in so large an amount. He probably knew nothing at the time about the provision invalidating his policy if concurrent insurance was carried, and he did not put his objection on that ground, but, whatever reason might have prompted his action, he had the right to decline to take any more insurance than was necessary to protect the security of the bank. We think he did this, and that the court below was correct in holding that there was in fact no liability against the Atlas Insurance Com-

pany, and in refusing to prorate the loss between appellant and that company.

Upon the proposition that the suit was prematurely brought, it may be said that, before the expiration of the sixty days allowed the company in which to determine whether it would pay the policy or not, the conclusion was announced that it would pay only one-half the policy, and this position appellant has since consistently maintained. The suit was therefore not brought prematurely. The refusal of the appellant to pay the face of the policy was in effect a denial of liability, and, when that position was announced, the right to sue accrued, even though the sixty days had not then expired. *Old American Ins. Co.* v. *Wexman,* 160 Ark. 571, 255 S. W. 6; *German Ins. Co.* v. *Gibson,* 53 Ark. 494, 14 S. W. 672.

If the appellant company was, in fact, liable for the face of its policy—and we think the court below was correct in so holding—then it is also liable for the statutory penalty and for a reasonable attorney's fee, and no objection is made as to the fee allowed.

The decree of the court below is correct, and is therefore affirmed.