LOCOMOTIVE ENGINEERS MUTUAL LIFE & ACCIDENT ASSOCIATION *v.* VANDERGRIFF.

4-4174

Opinion delivered February 17, 1936.

*Horn, Weisell, McLaughlin & Lybarger* and *R. S. Wilson,* for appellant.

*Partain & Agee,* for appellee.

Butler, J. Appellee, George W. Vandergriff, sued the appellant Association to recover under the terms of a policy which insured him in the sum of $4,500 against "total and permanent loss of sight in one or both eyes where there is no vision beyond mere light perception." Appellee recovered the amount sued for and this appeal follows.

The first contention made for reversal is that the suit was prematurely brought. This contention is based upon a provision of the by-laws of the Association providing in substance that where proof of permanent loss of sight is made it shall be upon a form furnished by the Association signed by two experienced oculists; that proof of blindness will be held on file at the home office for one year from the date of examination where the eye or eyes have not been removed from their sockets; that no recognition will be made for a claim for impaired eyesight, etc., but for total and permanent blindness only in one or both eyes where there is no vision beyond mere light perception.

Appellee notified the appellant of the impairment of his vision and requested of, and was furnished by,

the appellant a regular form upon which to make his proof of disability. The appellee prepared the proof to which was attached the certificate of two qualified oculists which was forwarded and duly received by the appellant. It is now claimed that the proof was insufficient, but this contention was not made at the time of its receipt, or at any time prior to the filing of the suit. On the other hand, the appellant communicated with its local secretary, Mr. J. B. Lemley of Van Buren, advising of the receipt of proof of loss of sight of the appellee, calling attention to the fact that when he made application for disability insurance the applicant stated that he had not had any trouble with his eyes, and advising that the matter had been referred to the appellant's doctor for investigation for the purpose of determining whether appellee had had any trouble with his eyes prior to the date of his application. In this letter, Mr. Lemley was also asked to make an investigation for the purpose of learning whether appellee had had any trouble with his eyes prior to the application. The letter concluded with the following paragraph: "However, the proof plainly shows that this brother is not totally and permanently blind as our laws require, due to the fact that he has 20/200 vision in the left eye. Therefore we are rejecting his claim, and ask that you so advise him."

It is argued by appellant that the letter, of which the above quotation is a part, is not a denial of liability but merely goes to the form of the proof in that it does not show total and permanent blindness and that the purpose of the letter was to call this to the attention of the appellee so that he might, in a year from the filing of his proof, correct this defect if possible and show total and permanent blindness within the meaning of the policy. This contention entirely overlooks the positive statements of the two oculists to the effect that appellee's left eye had a vision of 20/200, the specific cause of which was stated, and that this had caused "a permanent loss of sight in his left eye," as stated by one of the oculists, and, as stated by the other, "which will prove a permanent loss of vision." In justification of its position re-

garding the sufficiency of the proof, appellant construes the statements made by the oculists as an evasion "as to totality of loss, and no showing of totality was made." We do not so construe the statements of the physicians and perceive no evasion attempted in their answers. Certainly, if appellant was not satisfied with the statements of the physicians, it should have so advised the appellee, but this it did not do. Neither can we agree with the appellant in its claim that its letter was not a denial of liability. It plainly and unmistakably rejected the claim made on the ground that "the proof plainly shows that this brother is not totally and permanently blind as our laws require, due to the fact that he has a 20/200 vision in the left eye." Notwithstanding the statements of the examining physicians to the effect that appellee had suffered a permanent loss of sight in his left eye, appellant arbitrarily determined that a 20/200 vision was not a loss of vision as certified by the physicians, and, for this reason, rejected appellee's claim. It is difficult to perceive how denial of liability could be couched in more explicit and unmistakable terms. It is our opinion that the letter was a denial of liability, and therefore the provision of the by-laws relied on could have no application, for if it is reasonable at all, it is only so in cases where there is no denial of liability and as giving time for further investigation regarding the merits of the claim. By this denial of liability the appellant breached its contract and appellee's cause of action at once arose. *Business Men's Accident Ass'n of America* v. *Cowden*, 131 Ark. 419, 199 S. W. 108; *Old American Ins. Co.* v. *Wexman*, 160 Ark. 571, 255 S. W. 6; *Fire Ass'n of Philadelphia* v. *Bonds*, 171 Ark. 1066, 287 S. W. 587; *Mutual Life Insurance Co.* v. *Marsh*, 186 Ark. 861, 56 S. W. (2d) 433; *Sun Life Assurance Co. of Canada* v. *Coker*, 187 Ark. 602, 61 S. W. (2d) 447; *American National Insurance Co.* v. *Westerfield*, 189 Ark. 476, 73 S. W. (2d) 155.

It is insisted that before appellee could take advantage of a waiver of the by-laws postponing final action on the proof of loss for 12 months, same must have been pleaded in his complaint. There is no merit in this contention. We have not examined the cases cited from

foreign jurisdictions, but our own case of *American Insurance Co. of N. J.* v. *Brannon,* 184 Ark. 978, 44 S. W. (2d) 346, cited, does not sustain the contention made.

The necessary effect of the allegation of appellee's complaint was that liability had been denied, the conclusive proof of which was in the hands of the appellant at the time of the institution of the suit, and it could not have been prejudiced by the alleged defect in the pleading. Moreover, there was no objection to evidence offered relating to the proof of loss.

Insufficiency of evidence. The contention made by the appellant that the evidence was not reasonably sufficient to support the verdict and judgment cannot be sustained. The great preponderance of the testimony is to the effect that appellee has only 20/200 normal vision in his left eye. This is explained as a vision limited to detection of gross motion at six inches, or "the perception of light." As one physician expressed it, "he can see big objects moving—he has light perception. That is practically the extent of his vision." All the other physicians who testified agreed to this estimate of the extent and character of appellee's vision except one who was called on behalf of the appellant and testified that he found the vision of appellee's left eye to be 20/200 of normal and that this would give a better vision than light perception. This witness admitted on cross-examination, however, that a 20/200 vision and a detection of gross motion at six inches "is a little better than light perception, but not much."

It is manifest, when we abandon sophistry and indulge in plain thinking, that where one has no practical use of his eyes he is blind, and the ordinary person having a policy such as the one in the instant case would think that he was insured against blindness—so he is. "The ability to perceive light and objects, but no ability to distinguish and recognize objects, is not sight, but blindness." This, all men know. It would be unfair to the Association to impute to it the intention, by the artful employment of the words, "of light perception," to base its liability upon the frivolous distinction between the power to perceive objects in any character of light with-

out the ability to distinguish one object from another, and that totality of blindness which would make complete darkness. *Tracy* v. *Standard Accident Ins. Co.,* 119 Me. 131, 109 Atl. 490. The contract of insurance should be construed with a view to accomplish the purpose for which the Association was maintained and for which its members paid their premiums, and, when so construed, it is evident that the proof made brings appellee's condition within the terms of the policy. In fact, the evidence establishes liability even when the contract is given its strictest and most literal construction.

The appellant contends that the court erred in submitting to the jury the question of the reasonableness or unreasonableness of the clause in its by-laws providing for a waiting interval of 12 months from the date of the receipt of the proof of loss by the appellant until final action should be taken thereon. If it be conceded that this was error, the same could work no prejudice, for this instruction was unnecessary. As we have already seen, this provision of the by-laws—whether reasonable or unreasonable—has no application in the instant proceeding because of the denial of liability contained in the insurer's letter to its agent, a portion of which has been heretofore quoted. Other instructions complained of have been examined and we find them in harmony with the views expressed.

Objection was made to the argument of counsel for the appellee to the effect that it was stated by him that a finding by the jury against the appellee in this cause would forever preclude his recovery. Whether or not this was a correct statement is immaterial as it appears to have been made in answer to an argument by counsel for appellant and we are unable to see in what manner it was prejudicial. Neither have we been enlightened by counsel in this particular.

It is finally insisted that the court erred in assessing a penalty against the appellant and in allowing an attorney's fee to be charged against it. This contention is based upon §§ 6068 and 6069 and 6071 of Crawford & Moses' Digest as construed by this court in *United Order of Good Samaritans* v. *Meekins,* 155 Ark. 407, 244

S. W. 439, and *Gallagly v. American Insurance Union,* 180 Ark. 4, 20 S. W. (2d) 642. Appellant contends that it is a fraternal benefit society within the meaning of the sections of the digest and the decisions cited. It is true, the appellant so designates itself in its by-laws, but the business it transacts is essentially different from that transacted by a fraternal benefit society. In societies of that character the insurance of its members is paid by dues or assessments, while the contract here involved has all the earmarks of those issued by old-line insurance companies; it is styled an "ordinary life" policy; the premiums and reserve are based on the American Experience Tables and the premiums are fixed and payable as in an ordinary life policy. In determining whether the insurer is a fraternal society or an insurance company, the test is not the mere form of the organization, but the business in which it is actually engaged. In *State ex rel. Reece v. Stout,* 17 Tenn. App. 10, 65 S. W. (2d) 827, the court said: "Broadly speaking, it may be said that when a company, society, or association, either voluntary or incorporated, and whether known as a relief, benevolent, or benefit society, or by some similar name, contracts for a consideration to pay a sum of money upon the happening of a certain contingency, and the prevalent purpose and nature of the organization is that of insurance, it will be regarded as an insurance company and its contracts as insurance contracts, and this without regard to the manner or mode of the payment of the consideration, or of the loss or benefit." This seems to be the rule approved by the weight of authority. *Farmer v. State ex rel. Carruther,* 69 Tex. 561, 7 S. W. 220; *Filley v. Illinois Life Ins. Co.,* 93 Kan. 193, 144 P. 257, L. R. A. 1915D, 134.

Couch Encyc. of Insurance Law, vol. 1, § 253, p. 602, lays down the following as a test: "But, as a matter of fact, the question of the nature of the society, with respect to whether or not its contracts shall be regarded as those of an assessment or of an old-line company, is generally regarded as largely controlled by determining whether or not it operates on the assessment or co-operative plan, or on a fixed benefit and premium basis." See

also *Marcus* v. *Heralds of Liberty*, 241 Pa. 429, 88 Atl. 678; *Jones* v. *Commonwealth*, 255 Pa. 566, 100 Atl. 450; *Modern Order, etc.* v. *Bloom*, 69 Okla. 219, 171 Pac. 917; *Block* v. *Valley, etc.*, 52 Ark. 201, 12 S. W. 477; *State ex rel.* v. *Citizens, etc.*, 6 Mo. App. 163; *Ragsdale* v. *Brotherhood of Railroad Trainmen*, 229 Mo. App. 545, 80 S. W. (2d) 272.

We see no circumstances tending to establish the contention of appellant as to the nature of the contract except that it calls itself a fraternal society and applies to the insured the designation of "brother" when denying liability for a disability it had insured him against.

Finding no prejudicial error, the judgment of the trial court is correct, and it is, therefore, affirmed.

McHANEY, J., dissents to so much of the opinion as approves the allowance of penalty and attorney's fee.